**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann, Esq. (State Bar No. 229832)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635
cja@ackermanntilajef.com

**MICHAEL MALK, ESQ., APC**
Michael Malk, Esq. (State Bar No. 222366)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile: (310) 499-5210
mm@malklawfirm.com

Attorneys for SEAN BORING and the putative class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BORING, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY, a Delaware Limited Liability Company, and DOES 1 THROUGH 100, inclusive<br><br>Defendants. | Case No. 3:12-CV-05259-JST<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge:  Hon. Jon S. Tigar<br>Date:  September 11, 2013<br>Time:  2 p.m.<br>Courtroom: 9 |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  FACTUAL SUMMARY ......................................................................................... 3

    A.  Plaintiff's Claims ............................................................................................ 3

    B.  Procedural History ......................................................................................... 3

    C.  Marshalling of the Evidence ......................................................................... 4

        1.  Documents Produced By Defendant ................................................... 4

        2.  Data Produced By Defendant ............................................................. 4

    D.  Settlement Negotiations ................................................................................. 6

    E.  Summary of Settlement Terms ...................................................................... 7

III.  RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET ................. 9

    A.  Rule 23(a)(1) Numerosity .............................................................................. 9

    B.  Rule 23(a)(2) Commonality ........................................................................... 9

    C.  Rule 23(a)(3) Typicality .............................................................................. 11

    D.  Rule 23(a)(4) Adequacy .............................................................................. 11

    E.  Rule 23(b)(3) Predominance ....................................................................... 12

    F.  Rule 23(b) Class Action is Superior ........................................................... 13

IV.  PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ............ 13

    A.  The Proposed Settlement Falls Within the Range of Possible Approval ................ 14

    B.  Settlement Was the Product of Informed, Non-Collusive Negotiations ................ 16

    C.  The Settlement Agreement Contains No Obvious Deficiencies ............................ 17

        1.  The Settlement Does Not Grant Preferential Treatment to Segments of the Class ............................................................................................. 17

        2.  The Settlement Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative ........................................................ 17

        3.  The Attorneys' Fees Under the Settlement Agreement Are Reasonable ..... 18

V.  APPROVAL OF CLASS NOTICE AND RELATED FORMS ......................... 20

i

A.    Administration of Notice, Objections and Claims....................................................20

B.    The Court Shall Direct Distribution of the Notice of Settlement ............................21

C.    The Proposed Class Notice and Claims Process Are Appropriate ..........................22

D.    The Court Should Set A Final Approval Hearing.....................................................23

VI.    CONCLUSION.......................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591, 623 (1997)................................................................................12

*Eddings v. Health Net, Inc.,*
    No. CV 10-1744-JST (RZx) (C.D. CA July 27, 2011) ......................................10

*General Tel. Co. v. Falcon,*
    457 U.S. 147, 157-8, n. 13 (1982) ...................................................................11

*Hanlon v. Chrysler Corporation,*
    150 F.3d, 1029-1120 (9th Cir. 1998) ..................................................8, 11, 13

*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258, 262 (S.D.Cal. 1988) .................................................................9

*In re Bluetooth Headset Products Liability Litigation,*
    654 F.3d 935, 946 (9th Cir. 2011) ...................................................................14

*In re Lorazepam & Clorazepate Antitrust Lit.,*
    202 F.R.D. 12, 29 (D.D.C. 2001)......................................................................12

*In re Tableware Antitrust Litig.,*
    484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007) ..............................................13, 14

*Lewis v. Starbucks Corp.,*
    2:07-cv-00490 (E.D.Cal. 2008) .........................................................13, 15, 16, 19

*Martin v. FedEx Ground Package System, Inc.,*
    2008 WL 5478576, *8 (N.D.Cal.) .....................................................................19

*Mendoza v. Tucson School Dist. No. 1,*
    623 F.2d 1338, 1351 (9th Cir. 1980) ................................................................22

*Ortega v. J.B. Hunt Transport, Inc.,*
    258 F.R.D. 361, 367 (2009) .........................................................................12, 13

*Paul, Johnson, et al. v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ............................................................................18

*Ramos v. SimplexGrinnell LP,*
    2011 WL 2471584 (E.D.N.Y. 2011)..................................................................10

*Romero v. Producers Dairy Foods, Inc.,*
    2007 WL 3492841, *4 (E.D.Cal.)......................................................................20

*Singer v. Becton Dickinson and Co.,*
    2010 WL 2196104, *8 (S.D.Cal.) ......................................................................19

*Staton v. Boeing Co.*,
    327 F.3d 938, 976-77 (9th Cir. 1993) ................................................................ 17

*Stuart v. RadioShack Corp.*,
    2010 WL 3155645, No. C-07-4499 EMC (N.D. Cal. Aug. 9, 2010) ................................ 15

*U.S. v. Truckee-Carson Irrigation Dist.*,
    71 F.R.D. 10, 18 (D.Nev. 1975) ..................................................................... 21

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D.Cal. 2009) ........................................................... 14, 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043, 1048-50 (9th Cir. 2003) ............................................................ 18

*Wal-Mart Stores, Inc. v. Dukes, et al.*,
    131 S.Ct. 2541 (2011) .............................................................................. 9, 10


**STATUTES**

Cal. Bus. & Prof. Code §17200 ........................................................................ 3, 9

Cal. Labor Code §2802 .............................................................................. 3, 9, 19

NOTICE IS HEREBY GIVEN that, on September 11, 2013, at 2:00 p.m. in Courtroom 9 of the United States District Court for the Northern District of California before the Honorable Jon S. Tigar, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Sean Boring ("Plaintiff") on behalf of himself and all others similarly situated, will and does hereby move this Court for entry of an Order:

1.      Preliminarily certifying the class for purposes of settlement only;

2.      Preliminarily appointing Plaintiff as Class Representative for purposes of settlement only;

3.      Preliminarily appointing Craig J. Ackermann, Esq. of Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel for purposes of settlement only;

4.      Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the parties' Stipulation of Settlement of Class Action, including payment by Bed Bath & Beyond of California LLC of the Gross Settlement Amount of $415,000.00;

5.      Preliminarily approving the Enhancement Awards of $7,500 to Plaintiff Sean Boring in recognition of his service to the class and the risks that they undertook in filing and/or joining the Lawsuit;

6.      Preliminarily approving Class Counsel's request for up to 33% of the Gross Settlement Amount as attorneys' fees (i.e., up to $138,333.33);

7.      Appointing Simpluris, Inc. as the third-party Settlement Administrator for mailing notices and for settlement and claims administration, and approving that the fees and costs of the administration process, estimated to be no more than $20,000, be deducted from the Gross Settlement Amount; and

8.      Approving the proposed Notice of Class Action Settlement form, Claim Form and Estimated Amount of Payment Form, and ordering that they be disseminated to the Class as provided in the Stipulation for Class Action Settlement and Release.

Dated: September 4, 2013                    Respectfully submitted,

By: _____
                    Craig J. Ackermann, Esq./Michael Malk, Esq.
                    Attorneys for Plaintiff and the Settlement Class

## I. **INTRODUCTION**

Plaintiff Sean Boring ("Plaintiff"), on behalf of himself and the putative Settlement Class,[1] requests that this Court preliminarily approve the parties' proposed Joint Stipulation of Settlement and Release ("Settlement Agreement"),[2] entered into by Plaintiff and Bed Bath & Beyond of California Limited Liability Company ("Defendant") on August 23, 2013.

The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it in the above-captioned matter (the "Action"[3]) and all related penalties. In exchange, Defendant will pay the Settlement Class up to $415,000 ("Settlement Amount").

The Settlement Agreement and Notice distribution plan were the products of non-collusive, arm's-length negotiations by informed counsel and parties following an exchange of data and documents and an all-day mediation. The settlement is fair, reasonable and adequate to all. Accordingly, Plaintiff seeks: (1) preliminary approval of the Settlement Agreement; (2) provisional certification of the Settlement Class; (3) appointment of Plaintiff as Class Representative; (4) appointment of Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel; (5) approval of the parties' proposed form and method of notifying Class Members of the Settlement Agreement; (6) an order scheduling the hearing date for Final Approval of the Class Settlement; and (7) entry of a preliminary approval Order.[4]

---

[1] The proposed Settlement Class is defined as: All persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited Liability Corporation in the State of California from August 1, 2008 through the date of preliminary approval in a Covered Position. *See* Settlement Agreement, ¶¶ 6, 10, 15. "Covered Position" is defined as the positions of Store Manager, Assistant Manager and Department Manager. *See* Settlement Agreement, ¶ 15.

[2] The Settlement Agreement and the proposed Class Notice and Claim Form are attached as Exhibit A to the Declaration of Craig J. Ackermann (hereinafter "CJA Decl."), filed herewith. *See*, CJA Decl., ¶ 36.

[3] All capitalized terms have the same meaning as in the Settlement Agreement.

[4] Defendant vigorously denies liability or wrongdoing with respect to its policies and practices relating to reimbursement of reasonable and necessarily incurred business expenses alleged in the Action. Settlement Agreement, ¶ 45. Defendant reserves its right to argue that Plaintiff is an inadequate class representative and that his claims are not suitable for class treatment. *Id.*

## II. <u>FACTUAL SUMMARY</u>

### A. Plaintiff's Claims

Plaintiff alleges that Defendant failed to indemnify or reimburse Plaintiff and putative class members for necessary business expenditures incurred in direct consequence of the discharge of their duties pursuant to California Labor Code § 2802. Plaintiff alleges that Defendant required him and other putative class members to drive their own vehicles to other Bed Bath & Beyond stores to transfer inventory, to local banks to obtain change, to attend business-related meetings, and to travel to the Post Office and local businesses without reimbursing them for mileage expenses associated with that driving. Plaintiff also alleges that Defendant's failure to provide such reimbursement violated California Business and Professions Code §§ 17200 *et seq.* Plaintiff also alleges a claim for civil penalties pursuant to PAGA based on the underlying allegations that Labor Code § 2802 was violated. *See* Plaintiffs' Second Amended Class Action Complaint (Docket #26).

### B. Procedural History

On August 1, 2012, Plaintiff Sean Boring filed his Original Class Action Complaint in the Superior Court of California, Alameda County, on behalf of himself and others similarly situated. See Declaration of Craig J. Ackermann in Support of Plaintiff's Motion for Preliminary Approval of Class Settlement ("CJA Decl."), ¶ 16. On September 5, 2012, Plaintiff filed a First Amended Class Action Complaint in Superior Court of California, Alameda County adding a claim for penalties under California's Private Attorney General's Act ("PAGA"). *Id.*, ¶ 17. On October 10, 2012, Defendant filed its Answer to Plaintiff's First Amended Class Action Complaint. *Id.*, ¶ 18. On October 11, 2012, Defendant filed its notice of removal of the action to the United States District Court for the Northern District of California, asserting jurisdiction under the Class Action Fairness Act ("CAFA"). *Id.*, ¶ 19.

On December 20, 2012, Plaintiff served his first set of written discovery, consisting of special interrogatories and requests for production of documents. CJA Decl., ¶ 20. On January 18, 2013, Plaintiff and Defendant served their initial disclosures pursuant to Rule 26(a)(1). *Id.*, ¶ 21. On February 5, 2013, Defendant served its first set of written discovery, consisting of requests for admissions, interrogatories, and requests for production of documents. *Id.*, ¶ 22.

On May 29, 2013, Defendant produced documents constituting its company policies concerning

travel and expense, petty cash and hand carry transfers ("hand-carries"). CJA Decl., ¶23. On May 30, 2013, Defendant took Plaintiff's deposition. *Id.* Following Plaintiff's deposition and prior to any Rule 30(b)(6) deposition, the parties agreed to engage in additional informal discovery and mediation was scheduled for June 20, 2013 with mediator Jeff Ross, Esq. *Id.*

On August 14, 2013, the Court allowed Plaintiff to file his Second Amended Class Action clarifying that the putative class for which Plaintiff sought relief consisted of approximately 1,400 current and former Assistant Managers, Store Managers and Department Managers. Docket #26.

## C. Marshalling of the Evidence

Through discovery, Plaintiff's counsel have diligently pursued an investigation of the putative Class Members' claims, including: (1) interviews with putative Class Members; (2) review of relevant documents, including but not limited to documents constituting Defendant's expense reimbursement policies and procedures; (3) review of relevant data regarding the size of the putative class; (4) detailed examination of a computer-generated reports produced by Defendant of inter-store hand-carry transfers from July 2009 through September 2012; (5) detailed examination of computer-generated reports produced by Defendant of petty-cash pay-outs and mileage reimbursement pay-outs following reimbursement requests from employees; and (6) research with respect to the applicable law and Defendant's potential defenses. CJA Decl., ¶ 24.

### 1. Documents Produced By Defendant

During discovery, Defendant provided its policies that employees should be reimbursed for their business expenses, including its written policy that the mileage eligible for reimbursement excludes the number of miles driven as part of the employee's normal commute to or from work. CJA Decl., ¶ 25. Defendant also produced documentation showing that it reimbursed its employees for business expenses upon submission of reimbursement requests. *Id.* As explained further below, Defendant's internal documents and computerized records manifested that hand-carries were routinely performed by Store Managers, Assistant Managers and Department Managers. *Id.*

### 2. Data Produced By Defendant

As part of informal discovery prior to mediation, Defendant provided actual data of all inter-store hand-carry transfers in California from July 2009 through September 2012. CJA Decl., ¶ 26.

Specifically, in May 2013, and then on June 12, 2013, Defendant informally produced to Plaintiff an Excel spreadsheet and then an amended Excel Spreadsheet containing data from Defendant's computerized database records for the period of time from July 2009 through September 2012 that specifically identified, *inter alia*, all inter-store transfers that were made between Bed Bath & Beyond stores in California; the dates on which such inter-store transfers were made; the stores to and from which each transfer was made (thereby allowing certain mileage calculations to be made); and, in some but not all instances, the identity of the particular employee who performed the transfer. CJA Decl., ¶ 26.[5]

Defendant also informally produced a spreadsheet showing mileage reimbursements actually paid through petty cash in the amount of $69,844, and a spreadsheet reflecting Defendant's actual reimbursements of mileage expenses in California in an amount equal to $478,912.21. CJA Decl., ¶¶ 25-26.

According to Plaintiff's analysis of Defendant's data, Defendant's maximum exposure, excluding interest, attorney's fees, and potential PAGA penalties, amounted to approximately $825,729.84, CJA Decl., ¶ 26, but Defendant had already paid out more than $547,000 in mileage reimbursements from petty cash and in response to reimbursement requests, which Defendant claimed might include mileage employees drove when performing hand-carries. *Id.* Defendant also argued, among other things, that if class members did not submit requests for reimbursement, its duty to reimburse would not be triggered since it had no reason to know that the expenses were incurred and that the database information was not sufficient to trigger an obligation to reimburse. *Id.*

Plaintiff's damages model, which included adjustments for the proposed Class Release running

---

[5] According to Defendant's data: (1) there were 1,168 days in the sample period (from July 2009 through September 2012) out of 1,777 days in the class period to date (i.e., through May 2, 2013); (2) Defendant's sample thus included a summary of inter-store transfers on 66% of the days in the class period; (3) during the sample period, there were a total of 29,602 hand-carries; (4) total mileage from the transferring store to the receiving store in the sample for all hand-carries was 1,010,251 miles; (5) the reimbursement Plaintiff claims is owed to the Settlement Class Members for the sample period (calculated by multiplying the aggregate store-to-store mileage by the applicable IRS reimbursement rate) was $537,143.42; (6) by extrapolation, the total claimed mileage reimbursement payments for hand-carries from the beginning of the class period through May 2, 2013 (based solely on the sample) amounted to $825,729.84. CJA Decl., ¶ 26.

through October 2013 (as opposed to May 2013), for two-way trips that Plaintiff reasonably estimated based on Plaintiff's deposition testimony and interviews with Class Members occurred about 10% of the time,[6] and also included damage modeling for mileage expenses incurred for change runs to the local banks and for other business-related tasks, estimated Defendant's total maximum exposure at approximately $1,008,640, excluding interest and PAGA penalties.[7] CJA Decl., at ¶ 27.

In preparation for mediation, Plaintiff's counsel also performed a cross-check based on a sample of data provided for 10 stores to determine whether and to what extent Defendant's petty cash pay-outs and/or mileage reimbursement pay-outs corresponded to the mileage expenses incurred by putative class members. CJA Decl., ¶ 28. If the amounts paid-out for a particular month for a particular store in petty cash or mileage reimbursements were less than the mileage recorded on the Excel spreadsheet, Plaintiff's counsel concluded that the pay-out could not be for the mileage incurred. *Id.* ¶ 29. However, if the amount paid out for a particular month exceeded the amount incurred in mileage expenses, Plaintiff's counsel assumed that it was possible that a pay-out had been made. *Id.*

**D. Settlement Negotiations**

On June 20, 2013, the parties attended an all-day mediation at the offices of Jeffrey A. Ross, Esq., in Oakland, California. CJA Decl., ¶ 30; Malk Decl. ¶ 31. Plaintiff Sean Boring attended the all-day mediation along with attorneys Craig Ackermann, Esq. of Ackermann & Tilajef, PC, Michael

---

[6] A hand-carry transfer performed in the middle of the workday would not involve a commute and would constitute a two-way trip as a Class Member would have to travel to another Bed Bath & Beyond store and back. On the other hand, a hand-carry transfer performed before or after work would likely involve a commute and, at most, would trigger a reimbursement liability for the one-way trip from the pick-up store to the home store. CJA Decl. ¶ 27, and footnote 1 thereto.

[7] In terms of the potential PAGA liability, the putative class was potentially entitled to damages for one year. For those provisions of the Labor Code that contain no penalty, such as Section 2802, PAGA's catchall provision authorizes aggrieved employees to recover $100 per pay period for an "initial" violation and $200 per pay period for each "subsequent" violation (Lab. Code §2699(f)(2)). CJA Decl., ¶29. However, under the statute, the Court has discretion to award lesser amounts (or no amounts at all) for PAGA penalties. *Id.* Moreover, we had to take into account the argument that PAGA penalties may not be awarded in amounts that are disproportionate to the actual amount of unreimbursed mileage expenses. CJA Decl., ¶29; *see also, Stuart v. Radioshack Corp.*, 2010 WL 3155645,*4 (N.D.Cal.) (noting that PAGA penalties may not add a significant amount since the Court has discretion to award lesser amounts than those set forth in the statute).

Malk, Esq. of the Malk Law Firm, and settlement consultant Barry Goldstein. *Id.* Attorneys Rebecca Eisen and Stephen Taeusch of Morgan, Lewis & Bockius LLP, along with Defendant's corporate representative. *Id.* Negotiations were hotly contested and were conducted at arm's length; indeed, there were vigorous debates about Plaintiff's claims, Defendant's defenses, and the relevant data sets and documents. *Id.* Defendant vigorously denied Plaintiff's claims and asserted various defenses to class certification and to the substantive merits, for which substantial deductions were thought to be appropriate by Plaintiff's counsel *Id.* at ¶¶ 31-32, 35.

After a full day of negotiations, the parties agreed to settle for $415,000 with a claims process and no reversion to Defendant of any settlement monies, even those unclaimed. CJA Decl., ¶¶ 33; Settlement Agreement, ¶¶ 25, 50. Unclaimed funds from the $415,000 settlement amount, if any, will be re-allocated to the Qualified Claimants. *Id.*; Settlement Agreement, at ¶ 22. Thus, a Qualified Claimant's actual settlement payment could and very likely will exceed their Estimated Payment. *See id.* However, in no event will a Qualified Claimant's actual settlement payment be more than ten (10) times greater than the Estimated Payment. *Id.* (The Estimated Payment for a Class Member is proportionate to the Class Member's duration of employment in a Covered Position during the Class Period.) *Id.* Any amount in excess of ten (10) times the Estimated Payment shall be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco and submitted to the Court for approval. *Id.*

**E. Summary of Settlement Terms**

Under the terms of the Settlement Agreement, Defendant is discharged of all claims asserted in the Action ("Released Claims")[8] in exchange for paying the Settlement Amount ("MSA") of

---

[8] The Released Claims include:

> any and all claims, against Bed Bath & Beyond, as defined herein, arising from the allegations in the Complaint filed in the Action for claims under the California Labor Code sections 2802 and 2699 *et seq.* California Business & Professions Code § 17200, and all claims for related penalties, indemnity or reimbursement of expenses.

Settlement Agreement, ¶ 9. See CJA Decl., ¶ 36, Exhibit 1 thereto.

$415,000.[9] From that amount, and subject to court approval, will be subtracted Plaintiff's Incentive Award of up to $7,500, attorneys' fees to Plaintiff's Counsel of up to $138,333.33, Plaintiff's Counsel's actual costs of up to $10,000,[10] and the Claims Administration Costs up to $20,000.[11]

The Net Settlement Amount ("NSA") is the remainder, i.e., approximately $239,166.67, which shall be available for distribution to Class Members who file timely and valid claims.[12] The average Estimated Amount per class member, without taking into account any possible upward adjustments, is approximately $170.83.[13]  However, this is a claims-made settlement with undistributed and unclaimed funds to be re-allocated to the Qualified Claimants.[14] Thus, a Qualified Claimant's actual settlement payment could, and likely will, exceed the Estimated Payment. However, in no event will a Qualified Claimant's actual settlement payment be more than ten (10) times greater than the Estimated Payment.[15] Any amount in excess of ten (10) times the Estimated Payment shall be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco and submitted to the Court for approval.[16] This could only occur if the total amount claimed by Class Members amounts to less

---

[9] Settlement Agreement, ¶¶ 25, 50.

[10] To date, the litigation costs incurred by Ackermann & Tilajef, P.C. amount to approximately $6,852.48, consisting of $2,250.00 in mediation fees to Jeffrey Ross; $1,671.17 for deposition transcripts; $871.03 for mediation expenses including flight and accommodations; $87.44 for shipping expenses; $387.69 for expenses relating to Plaintiff's deposition including airfare and other necessary expenses; $850.15 for in-house copying; and $735.00 for legal research. *See* CJA Decl. ¶ 53. Co-counsel Michael Malk, Esq. has incurred an additional $4,248 in litigation costs, bringing the total expected likely litigation costs to around $11,100, more than the $10,000 for which the Settlement Agreement permits recovery. *See id.*, Malk Decl. ¶ 45. Plaintiff's counsel will, however, only seek to recover $10,000 in litigation costs, per the Settlement Agreement.

[11] Settlement Agreement, ¶ 50, (A)-(D)

[12] Settlement Agreement, ¶ ¶ 23, 56, 70.

[13] Calculated as follows: $239,166.67 (net settlement amount) / 1,400 (approximate number of putative class members) = $170.83 (average award per class member).  This average estimated amount assumes a claim rate of 100%.  If the claim rate is lower, however. each Qualified Claimant will receive a higher settlement award than their estimated amount.

[14] Settlement Agreement, ¶ 70.

[15] Settlement Agreement, ¶¶ 22, 50F.

[16] Settlement Agreement, ¶50A.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

8

than 10% of the NSA.[17]

## III. RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET

To determine the fairness of any settlement agreement calling for the creation of a settlement class, courts must decide whether the settlement class meets the requirements for class certification. *Hanlon v. Chrysler Corporation,* 150 F.3d, 1029-1120 (9th Cir. 1998). Here, the Settlement Class meets all of the requirements set forth in Fed. R. Civ. P. 23. Rule 23(a) sets our four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23(b)(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

### A. Rule 23(a)(1) Numerosity

Numerosity is easily satisfied because there are approximately 1,400 members in the Settlement Class.[18] *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D.Cal. 1988) (40 enough).

### B. Rule 23(a)(2) Commonality

The settlement class satisfies commonality in that all Class Members share, *inter alia,* the following legal and factual questions: (1) whether Defendant violated California Labor Code §2802 by failing to reimburse Store Managers, Assistant Managers and Department Managers for out of pocket business expenses incurred through the use of their personal vehicles; (2) whether Defendants violated §17200 et seq. of the California Business & Professions Code by failing to reimburse Store Managers, Assistant Managers and Department Managers for out of pocket business expenses incurred through the

---

[17] The Claim rate in similar cases is typically around 20%. *See e.g.*, *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (granting final approval on a similar §2802 claim where 20% of the funds available were claimed by class members and the majority of the settlement funds were donated to charity); Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490 (E.D. Cal. Dec. 10, 2008), ECF No. 57 (same). The settlement structure here significantly improves upon the settlement structure in *Radioshack* because, as noted, the unclaimed funds here will be redistributed to timely claimants in an aggregated amount up to ten times the total amount claimed from the NSA.

[18] CJA Decl., ¶40.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

9

use of their personal vehicles as a requirement of employment unless they submitted a formal claim for reimbursement; (3) whether Defendant's policy to exclude the "normal commuting miles" from reimbursable mileage violates Section 2802 of the Labor Code where, as here, Store Managers, Assistant Managers and Department Managers are asked to pick up or drop off products for other stores before or after work; (4) whether the failure to reimburse mileage-related expenses in the absence of a request for reimbursement is legal in the face of records showing "hand-carry" transfers by Store Managers, Assistant Managers and Department Managers; and (5) the nature and extent of Class-wide injury and the measure of damages for the injury.[19]

---

[19] The reasoning of the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes, et al.*, 131 S.Ct. 2541 (2011) supports the conclusion that Plaintiff can make a sufficient showing of commonality under the facts and circumstances of this case. In *Dukes*, a huge and sprawling nationwide Title VII class action brought under Rule 23(b)(2), the Court held that the plaintiffs had failed to establish commonality. *Dukes*, 131 S.Ct at 2555-56. Noting the absence of an "express corporate policy" of discrimination and the fact that the challenged employment decisions were "generally committed to local managers' broad discretion," *id.*, the Court held that there was no "significant proof" to bridge the "conceptual gap" between an individual's claim of injury and the existence of a class of persons who had suffered the same injury. *Id.* at 2552-54. The Court further noted that the gap could be bridged by either common policies or by "significant proof that [the employer] operated under a general policy of discrimination." *Id.* at 2553 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147 (1982)).

In *Dukes*, there was a "policy" of allowing discretion by local supervisors over employment matters that, as the Supreme Court observed, "is a policy against having uniform employment practices." *Id.* at 2554. Here, by contrast, Defendant's uniform written policy provided that, when an employee performed a work-related errand during his or her regular daily commute, the mileage eligible for reimbursement would exclude the number of miles incurred as part of the regular commute. Thus, in its application, this written policy did not reimburse Store Managers, Assistant Managers, and Department Managers or *all* mileage despite Defendant's actual or constructive knowledge that persons holding these positions were routinely making hand-carries using their personal vehicles and were not submitting reimbursement requests. This knowledge is reflected, *inter alia*, in the computerized database records of hand-carry transfers. *See* CJA Decl, ¶¶ 25-6. These allegations constitute common policies or practices sufficient to justify class certification for settlement purposes. *See Ramos v. SimplexGrinnell LP*, No. 07-cv-981 (SMG), 2011 WL 2471584 (E.D.N.Y. June 21, 2011) (certifying a class of employees seeking unpaid wages. Specifically, the court found commonality under Rule 23(a)(2) because unlike *Dukes*, the relevant payroll procedures were centralized, and thus *Dukes*, where the relevant decisions were left to the discretion of local managers, had little bearing); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZx) (C.D. Cal. July 27, 2011) (rejecting defendant's motion to reconsider certification of class because the defendant subjected the class members to the same "timekeeping and rounding policies" and thus the legality of the rounding policies "satisfies *Dukes* and is proper for class-wide resolution"). Given Defendant's uniform practices and the significant proof of failure to reimburse for business-related expenses incurred by Store Managers, Assistant Managers, and (footnote continues on next page)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-cv-05259-JST

10

**C. Rule 23(a)(3) Typicality**

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Here, typicality is satisfied because the Plaintiff's claims are the same as the claims that could be brought by Class Members.[20] Plaintiff worked for Defendant as an Assistant Manager, and as such was subject to the same policies and practices that gave rise to the claims of the Class. *Id.* All Class Members seek the same relief; reimbursement from Defendant for their work related mileage expenses. Further, Plaintiff and other Class Members allege the same injury.

**D. Rule 23(a)(4) Adequacy**

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts interpret this requirement to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiff and their counsel vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff does not have interests adverse to those of the Settlement Class. Boring Decl., ¶ 5. Plaintiff was a typical Assistant Manager, and like the other Class Members was subject to all the

---

Department Managers, the plaintiff has presented common questions "that will connect" the decisions regarding the reimbursement of class members to the "claim for class relief." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981 (9th Cir. Sept. 16, 2011); *see also* Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint; and Granting Plaintiff's Motion for Class Certification, *Stuart v. RadioShack Corp.,* No. C-07-4499 EMC (N.D. Cal. Feb. 5, 2009) Docket Nos. 37, 51 (certifying § 2802 claims very similar to those alleged here and noting that consistent practices on non-reimbursement for business trips usually sufficient to satisfy commonality requirement); *Wilson v. Kiewit Pacific Co.*, No. C 09-03630 SI, 2010 WL 5059522, at *7 (N.D. Cal. Dec. 6, 2010) ("whether it was necessary for the employees to attend the meetings and off-site trainings [for which reimbursement was sought] is a common question"); *Schulz v. QualxServ, LLC*, Nos. 09-cv-17-AJB (MDD), 09-cv-2081, 2012 WL 1439066, at *3 (S.D. Cal. April 26, 2012) (certifying the class because plaintiffs "challenge uniform policies and systemic practices that apply to this class of employees"); *Hopkins v. Stryker*, No. 5:11-cv-02786-LHK, 2012 WL 1715091, at *5 (N.D. Cal. May 14, 2012) ("[d]istrict courts throughout this Circuit have found that commonality is met when, as here the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses . . . .").

[20] CJA Decl., ¶45; Boring Decl., ¶4.

alleged policies and practices that gave rise to the Action. CJA Decl., ¶45; Boring Decl., ¶4. Where, as here, the claims of the Class Members and the named Plaintiff are virtually coextensive, there is no conflict. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories that were alleged in the Action and has been involved at various stages throughout the litigation. Boring Decl., ¶6. Likewise, Class Counsel have no conflicts of interest and have vigorously prosecuted the action on behalf of Plaintiff and the Settlement Class. Ackermann & Tilajef, P.C. and Michael Malk, Esq. APC, both separately and together, have significant experience litigating class actions and have been certified by numerous state and federal courts as competent and adequate class counsel. CJA Decl., ¶¶ 5-12; Malk Decl. ¶¶ 4-27.

**E. Rule 23(b)(3) Predominance**

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). For common questions of law and fact to predominate, the issues that are subject to generalized proof should predominate over those subject to individualized proof. *Ortega v. J.B. Hunt Transport, Inc.,* 258 F.R.D. 361, 367 (2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 280 F.3d 124, 136 (2d Cir. 2001)). Accordingly, courts must determine whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Lit.,* 202 F.R.D. 12, 29 (D.D.C. 2001).

Here, a common nucleus of facts and issues predominates over individual issues because Plaintiff can establish all of his claims by focusing on Defendant's company-wide policies and practices that applied consistently and uniformly to all Class Members throughout the Class Period. Specifically, Plaintiff can rely on common proof that Defendant failed to develop or enforce any systematic company-wide mechanism to affirmatively reimburse Class Members for business-related expenses incurred while using their personal vehicles for business purposes, such as hand-carries, despite actual or constructive knowledge that Class Members were routinely incurring such expenses

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

12

but not requesting reimbursement of them.[21] Furthermore, Plaintiff can challenge the legality of excluding "normal commuting miles" from reimbursable mileage where, as here, there is evidence that Store Managers, Assistant Managers and Department Managers routinely pick up or dropped off products from other stores on their way to or after leaving their home store. See CJA Decl., ¶25.[22]

## F.  Rule 23(b) Class Action is Superior

To determine whether the class method is superior to other means of adjudicating the claims of many people, courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. *J.B. Hunt,* 258 F.R.D. at 370. Here, the superiority requirement is satisfied because it would be highly inefficient for 1,400 Class Members to file individual cases; certification will provide the Settlement Class with a viable method of obtaining redress for their modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace. *Hanlon,* 150 F.3d at 1023.

## IV. PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(A). The process by which the court makes this determination involves two steps: (1) there must be preliminary approval of the proposed

---

[21] While Defendant has stipulated to certification of the class for settlement purposes, Defendant does not believe that class certification would be appropriate outside the settlement context and specifically reserves its right to oppose class certification if the Court denies approval of the proposed settlement.

[22] Plaintiff's theory of the case is that the normal commute is shortened from the distance from home to the first pick up store when a Store Manager, Assistant Manager or Department Manager must pick up an item on the way into work. As noted, Judge Chen of the United States District Court for the Northern District of California certified a class of retail store employees with respect to very similar §2802 claims in Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint; and Granting Plaintiff's Motion for Class Certification, *Stuart v. RadioShack Corp.,* No. C-07-4499 EMC (N.D. Cal. Feb. 5, 2009) (Docket # 37 and 51.); *see also Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490, ECF No. 43 (E.D. Cal. Sept. 11, 2008) (preliminarily certifying class for purposes of settlement); Section IV (A), *supra; Schulz,* 2012 WL 1439066, at *3 (certifying the class because plaintiffs "challenge uniform policies and systemic practices that apply to this class of employees").

settlement and of the Notice to be sent to class members, and (2) there must be a fairness hearing at which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered.

In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations, and (3) has no obvious deficiencies such as granting preferential treatment to segments of the class, granting unduly preferential treatment to the class representatives, or awarding unreasonable attorneys' fees. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009); *In Re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Man. For Complex Lit.*, (3d ed.) §30.41; *Newberg on Class Actions,* (4th ed. 2002) §§ 11:24-25.[23]

**A.  The Proposed Settlement Falls Within the Range of Possible Approval**

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the

---

[23] Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair. *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 946-47 (9th Cir. 2011). Courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. *Id.* A few such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.* (internal citations omitted).

Here, the settlement agreement was negotiated at arm's-length and there are no signs of collusion. CJA Decl., ¶30. As discussed herein, the settlement's provision for attorneys' fees is proportionate to the class award, and the attorneys' fees sought are also appropriate when measured on a lodestar basis. Moreover, the settlement does not include a provision that all fees not awarded to Plaintiff's counsel will revert to Defendant; rather, any unawarded fees shall be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco. *See* CJA Decl., ¶ 33; Settlement Agreement ¶ 22. Thus, the MSA is non-reversionary. Settlement Agreement, ¶ 22, 50(a), 77.

settlement offer. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Vasquez,* 670 F. Supp. at 1125.

In *Lewis v. Starbucks Corp.*, the U.S. District Court for the Eastern District of California approved a maximum $3 million settlement between Starbucks and approximately 30,000 of its California managers, arising out of claims for reimbursement of travel expenses, specifically mileage for business errands performed by employees in their personal vehicles. Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, *Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008), ECF No. 57. At the time of preliminary approval, the parties' estimated that the average class member award would be $60. *See* Memorandum and Order, at 4, *Lewis v. Starbucks Corp.*, Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Sept. 11, 2008), ECF No. 43 (granting preliminary approval). Participating class members ultimately received gross payments between $36 and $110. *See* Order Granting Final Approval, *Lewis,* Case No. 2:07-cv-00490, ECF No. 57.

In *Stuart v. RadioShack Corp.*, Case No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010), Judge Edward M. Chen of the U.S. District Court for the Northern District of California approved a maximum $4.5 million settlement releasing defendant from its liability for its alleged failure to reimburse 15,000 assistant managers for the use of their personal vehicles to perform inter-company transfers. At the time of preliminary approval, the parties' estimated that the average class member award would be about $198.[24] *See* Order Granting Preliminary Approval, *Stuart v. Radioshack Corp.*, Case No. 3:07-cv-04499-EMC (N.D. Cal. Apr. 9, 2010), Docket No. 176.

Like the agreements in *RadioShack* and *Starbucks*, the Settlement Agreement in this case confers a substantial benefit on the Settlement Class.  Pursuant to the terms of the Settlement Agreement, Defendant will pay $415,000 in exchange for a full discharge of Plaintiff's and

---

[24] Notably, the *RadioShack* case settled on the eve of trial, *i.e.,* after class certification and after years of discovery and trial preparation had been completed. The size of the class in *RadioShack* was also significantly larger than the size of the Settlement Class in the instant case.

Participating Class Members' Released Claims.[25]  This amount is equivalent to approximately 41% of Plaintiff's maximum damages analysis (excluding interest and penalties) and the valuation of the Released Claims.[26] Once all the appropriate deductions have been made from the Maximum Settlement Amount, the amount available for distribution to Plaintiff and the Settlement Class is approximately $239,166.67. Participating Class Members will receive on average, an estimated $170.83 per Class Member (i.e., $239,166.67 / approximately 1,400 class members = $170.83), and the maximum amount that may be disbursed to any Claimant will be approximately $1,708.30.[27]

Moreover, this case resembles *RadioShack* and *Starbucks* in that pursuit of the Action through trial would impose significant risks on the outcome of Plaintiff's claims. First, briefing a motion for class certification and subsequently trying a class action case carry with them inherent risks, expenses and delays. *See, e.g., Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341, 1371 (Cal. Ct. App. 2012) (affirming denial of class certification in 2802 case). Moreover, subsequent appellate proceedings, if any, would entail even greater risks, expenses and delays.  Litigation is inherently risky for all sides.[28]

**B.  Settlement Was the Product of Informed, Non-Collusive Negotiations**

The Settlement Agreement is the product of adversarial litigation between the parties. Malk Decl., ¶ 31; CJA Decl., ¶30. Both parties are represented by independent counsel with considerable

---

[25] Settlement Agreement ¶ 50.

[26] CJA Decl., ¶¶ 26-7 (Plaintiff's estimated damages = $1,008,640; $415,000/$1,008,640 = 41.14%).

[27] Each Class Member's Estimated Amount will be calculated based on their weeks worked during the Class Period as a Percentage of all Class Members' weeks worked during the Class Period. Settlement Agreement ¶ 70.  Qualified Claimants will receive a maximum of 10 times their average estimated amount (i.e., $170.83 x 10 =$1,708.30). This could only occur if only 10% of the NSA is claimed.  The distribution formula is fair and is based on the reasonable assumption that all Class Members performed hand-carry transfers with the same or similar frequency.  Class Members will have to complete a Claim Form, including an attestation that they performed hand-carry transfers without receiving reimbursement for their mileage-related expenses, as a prerequisite to their receiving their portion of the NSA. Settlement Agreement ¶¶31, 56, 63, 64, 69.  The Claim Forms will contain each Class Member's Estimated Amount. Settlement Agreement ¶ 63. The maximum amount per class member is ten times estimated amount. Settlement Agreement ¶ 70.

[28] *See e.g., Stuart v. Radioshack Corp.*, 2010 WL 3155645, *4 (N.D.Cal.) (in his Order granting final approval to the settlement, Judge Chen noted: "And it is entirely plausible that Radioshack could prevail on an appeal, either in whole or in part, because the issue of when an employer's duty to reimburse is triggered is a novel one, never addressed by any state or federal court").

experience in litigating complex wage and hour class actions. CJA Decl., ¶¶ 5-12; Malk Decl., ¶¶ 8-27. Counsel for both parties conducted significant informal discovery, formal discovery, and undertook thorough factual analyses prior to the commencement of settlement negotiations and mediation. *See*, Section II, *supra*. After a full day of negotiation, the parties reached an agreement, which is memorialized in the Settlement Agreement, and which recognizes and reflects the inherent expense, delay and uncertainty that briefing a motion for class certification and eventually conducting a trial would necessarily entail.

### C.  The Settlement Agreement Contains No Obvious Deficiencies

#### 1.  The Settlement Does Not Grant Preferential Treatment to Segments of the Class

Under the terms of the Settlement Agreement, after costs, fees and the enhancement award have been paid, each Claimant will receive a proportionate share of the net settlement fund based on the number of weeks worked during the Class Period. Settlement Agreement, ¶¶ 19, 20, 26, 70. This methodology was adopted to reduce potential inequities between Participating Class Members and to optimize the claim amount for each Claimant. Because each Claimant's share of the net settlement fund is based on a formula that includes the "weeks worked" specific to each member, no segment of the settlement class is given undue preferential treatment at the expense of others. As such, the Settlement Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Settlement Class.

#### 2.  The Settlement Agreement Does Not Grant Unduly Preferential Treatment to the Class Representative

Likewise, the enhancement award contemplated by the Settlement Agreement, if approved by this Court, would not constitute unduly preferential treatment in favor of Plaintiff. In order to determine the propriety of enhancement awards, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the Plaintiff. *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 1993).

Here, Plaintiff provided significant assistance to Class Counsel during this case. Specifically, Sean Boring provided factual background for the Class Complaint; provided and explained documents corroborating his allegations to Class Counsel; reviewed the Complaint and other pleadings filed with

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

17

the Court by Plaintiff; was deposed by Defendant, and also traveled to and attended the all-day mediation where he carefully considered, evaluated and approved the terms of the Settlement Agreement on behalf of the Class. Boring Decl., ¶ 6. These efforts were instrumental in securing the favorable terms of the Settlement Agreement, which will provide monetary compensation to a Class of approximately 1,400 current and former employees of Defendant. CJA Decl., ¶ 40. Moreover, Plaintiff is also generally releasing all claims, thereby providing a more robust release than that of the Class. Settlement Agreement, ¶ 71A. In light of these efforts, the proposed Enhancement Award of $7,500 to Plaintiff Sean Boring is reasonable and justifies preliminary approval.[29]

### 3. The Attorneys' Fees Under the Settlement Agreement Are Reasonable

The proposed attorneys' fees should be preliminarily approved by this Court because they are reasonable and fair. In cases that involve common funds, a court has discretion to award attorneys' fees as a percentage of the settlement. *See, Paul, Johnson, et al. v. Graulty,* 886 F.2d 268 (9th Cir. 1989). The court may consider: (1) whether counsel obtained excellent results for their client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine Plaintiff's Counsel's lodestar. *Id.* at 1047.[30]

---

[29] *See, e.g., Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *14-*15 (E.D. Cal. June 30, 2011) (approving incentive payments of $11,250 to each of the two named plaintiffs); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (approving incentive payments of $5,000 to each of the named plaintiffs); *Romero v. Producers Dairy Foods, Inc.,* No. 1:05-cv-0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving incentive payments of $4,000 and $3,000 to the two named plaintiffs and $7,400 among class members deposed).

[30] To date, Plaintiff's Counsel have together expended 268.03 total hours in this litigation, for a total current lodestar of $ 101,592.25, as set forth in the following table. *See* CJA Decl. ¶¶ 54-59; Malk Decl. ¶¶ 42-44. Plaintiff's Counsel anticipates performing an additional 30 hours of work through final approval (CJA Decl., ¶ 52), which will likely bring our total lodestar to approximately $ 111,092.30.

(footnote continues on next page)

Here, Plaintiff's Counsel achieved a good result for the Settlement Class. As stated above, Plaintiff's Counsel secured an agreement whose Maximum Settlement Amount is 41% of the maximum value of the Released Claims, excluding penalties and interest (according to Plaintiff's damages model) and entitles Participating Class Members to awards averaging approximately $170.83 to a maximum amount of approximately $1,708.30 for Class Members who worked throughout the entire Class Period. These results are consistent with other class action settlements involving §2802 claims approved by other federal courts in California. *See, e.g., Stuart v. RadioShack Corp.,* No. C-07-4499 EMC (N.D. Cal. Aug. 9, 2010)*; Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, Lewis v. Starbucks Corp.,* Case No. 2:07-cv-00490-MCE-DAD (E.D. Cal. Dec. 10, 2008), ECF No. 57. Underscoring the benefit conferred upon the Settlement Class is the fact that litigating wage and hour class actions is inherently risky.[31] Importantly, Plaintiff's retainer agreement with Plaintiff's Counsel stipulates to attorneys' fees of up to 1/3.[32]

| Name | Hours | Hourly Rate | Total Lodestar |
|------|-------|-------------|----------------|
| Craig J. Ackermann, Esq. | 59.20 | $550 | $32,560.00 |
| Jala Amsellem, Esq. | 35.80 | $600 | $21,480.00 |
| Rosie Salinas | 31.30 | $200 | $6,260.00 |
| Landen Buckley | 30.75 | $200 | $6,150.00 |
| Michael Malk, Esq. | 23.75 | $525 | $12,521.25 |
| Linda Sieger | 17.03 | $200 | $3,406.00 |
| Daniel Korda | 59.20 | $200 | $6,150.00 |
| Barry Goldstein | 11.00 | $805 | $8,855.00 |
| **Total Current Lodestar** | 268.03 | | $101,592.25 |

If the Court desires detailed time records, Plaintiff's Counsel is happy to produce them in camera. However, detailed time records are not required for lodestar calculations. *Wershba v. Apple Computers Inc.,* 91 Cal. App. 4th 224, 255 (2001). Prior to the expiration of the period of time allotted for class members to make objections to the settlement, Plaintiff will file a motion and brief for fees and costs (to be heard at the same time as the Final Fairness Hearing) so that class members will be able, if they elect to do so, to review the fees motion prior to making objections or filing a claim. The forthcoming fees motion will contain a detailed justification for the billing rates set forth above, and also will describe the tasks performed by each individual.

[31] *See* Section IV(A), *supra.*

[32] CJA Decl., ¶ 51. Moreover, the fees requested here are consistent with the awards obtained in similar class actions. CJA Decl., ¶ 51. As noted, Plaintiff's Counsel intends to file and fully brief a motion for attorneys' fees prior to the final approval hearing and prior to the expiration of the deadline for class members to object to the settlement that will include, inter alia, an itemized listing of all costs incurred (footnote continues on next page)

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

19

Furthermore, the requested attorneys' fees amounting to 1/3 of the Settlement Amount are consistent with the fees awarded in similar cases. Order Granting Final Approval of Class Action Settlement and Award of Attorneys Fees and Costs, at 3, *Wilson v. Kiewit Pacific Co*., No. 09-cv-03630 (N.D. Cal. April 4, 2012), ECF No. 119 (approving fee award of 1/3 of the common fund and noting that such award is fair, reasonable and appropriate); *Stuart v. RadioShack Corp.,* No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (approving fee award of 1/3 of the common fund and noting that attorneys' fees of 1/3 were "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."); *Singer v. Becton Dickinson and Co.*, No. 08–CV–821–IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving fee award of 33.33% of the common fund; award was similar to awards in three other wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx Ground Package System, Inc.*, No. C 06–6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (approving fees of 1/3 of common fund in wage and hour class action); *Romero v. Producers Dairy Foods, Inc.,* No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery.").

## V.  APPROVAL OF CLASS NOTICE AND RELATED FORMS

### A.  Administration of Notice, Objections and Claims

The parties have selected Simpluris, Inc., an experienced claims administrator, to serve as the Claims Administrator. Settlement Agreement, ¶ 61. Within thirty (30) days of preliminary approval of the Settlement, Defendant will provide Simpluris, Inc. with the last known home address in a format to be determined by the Claims Administrator and Defendant. *Id.*, ¶ 62. Simpluris, Inc. will mail all Class Members the Class Notice and Claim Form.[33] The Claim Form provides each Class Member's Estimated Payment, as well as the statement that "Unclaimed settlement funds associated with Class Members who do not submit Claim Forms will be reallocated to Class Members who do submit timely

---

in litigating this case. To date, the litigation costs incurred amount to approximately $11,100.78. *See* CJA Decl., ¶ 53; Malk Decl. ¶ 45.

[33] Attached respectively as Exhibits 1 and 2 to the Settlement Agreement. *See* Settlement Agreement, ¶ 62.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

20

and signed Claim Forms."[34] *Id.* ¶ 64. Class members have sixty (60) days from the notice mailing to submit a claim. *Id.* ¶ 65. All Qualified Claimants who have timely submitted valid claim forms and have not opted out of the settlement will be eligible to receive a Settlement Payment. Settlement Agreement, ¶ 56.

The notice informs each Class Member of his or her right to object to the settlement. Settlement Agreement, Exhibit 1 thereto, at 3-4. Class Members who wish to object to the Settlement must object in writing, stating the basis for the objection, file the objection with the Court and serve the parties' counsel and be postmarked no later than forty-five (45) days after the mailing of the Settlement Documents. *Id.* Otherwise, Class Members shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement.[35]

## B.  The Court Shall Direct Distribution of the Notice of Settlement

This Court should order distribution of the proposed Class Notice in the manner described in the Settlement Agreement. Fed. R. Civ. P. 23(e)(1)(B) requires the Court to direct notice to class members "in a reasonable manner." *See also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice by mail provides adequate "individual notice to all members." *Id.* Where the names and addresses of the class members are ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. If notice by mail is ordered and addresses are available, as here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose." *U.S. v. Truckee-Carson Irrigation Dist.,* 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Class Members' names and last known addresses are ascertainable. The Class Members are current and former Store Managers, Assistant Managers and Department Managers of Defendant, whose names and last known addresses are maintained by Defendant in its personnel files. Per the Settlement Agreement, the Claims Administrator will use the National Change of Address database and will use the most recent address for each class member—either from Defendant's records

---

[34] The notice explains that the final amount may change depending on the Court's final approval order.

[35] Class Members also have the right to challenge the "employment tenure of Class Members and their weeks employed in Covered Positions." Settlement Agreement, ¶ 65.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-cv-05259-JST

21

or the National Change of Address database—when mailing the class notice. Settlement Agreement, ¶ 62. The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement and the Class Members' rights (including procedures for making claims, requesting exclusion from, or objecting to, the Settlement Agreement).[36] Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

**C.   The Proposed Class Notice and Claims Process Are Appropriate**

Fed. R. Civ. P. 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. *See* Settlement Agreement, Exhibit 1. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not opt out, the judgment will be binding upon them. *Id*. The Notice informs the Settlement Class about the application of Plaintiff's Counsel for reimbursement of attorneys' fees and costs from the MSA, as well as the amount sought. *Id*. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. *Id*.

---

[36] A reminder notice will also be sent to Class Members 21 days before the end of the claim period. Settlement Agreement, ¶ 67.

The detailed information in the Proposed Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) (stating that a "very general description of the… settlement" satisfies standards).

**D.  The Court Should Set A Final Approval Hearing**

Finally, this Court should set a hearing for final approval of the Settlement Agreement on a date to be scheduled within sixty (60) days after the end of the Claims Period, or at the earliest available time for the Court, whichever is later. In order to have time for the notice dissemination process to be completed, for the parties to review any objections and prepare responses, and for Plaintiff to prepare papers supporting final approval, Plaintiff proposes that the Court should set the final approval hearing on or after January 29, 2014, and allow the parties to file any final approval papers for the hearing twenty-one (21) days before the hearing.[37] These dates would allow a reasonable period for mailed notice and for Class Members to submit claims, object to or opt-out of the settlement, but would not unduly delay the Class Members' receipt of individual settlement awards.

**VI. CONCLUSION**

For the reasons discussed above, Plaintiff requests that the Court enter an order of preliminary approval of the class action settlement, approve the form of the proposed notice, and approve the proposed schedule, including setting a date for a final approval hearing.

Dated: September 4, 2013                              Respectfully submitted,

                                                      By:  _____
                                                           Craig J. Ackermann, Esq./Michael Malk, Esq.
                                                           Attorneys for Plaintiff and the Settlement Class

---

[37] As noted, Plaintiff's motion for attorneys' fees and costs will be filed earlier, two weeks before the expiration of the deadline for Class Members to object to the settlement, but will be heard at the same time as the final approval motion.  This will be done to ensure that any putative Class Member who wishes to object to the fees or costs will have the ability to review Plaintiff's motion prior to the objection deadline.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL – CASE NO.: 3:12-CV-05259-JST

23