UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BORING,<br><br>    Plaintiff,<br><br>    v.<br><br>BED BATH & BEYOND OF CALIFORNIA LIMITED LIABILITY COMPANY,<br><br>    Defendant. | Case No. 12-cv-05259-JST<br><br>**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 27 |

Before the Court is Plaintiff Sean Boring's Motion for Preliminary Approval of Class Action Settlement, ECF No. 27.  Plaintiff's operative complaint alleges Defendant Bed Bath & Beyond of California, LLC failed to reimburse its California Store Managers, Assistant Managers, and Department Managers for the use of their personal vehicles for business-related purposes and for gas mileage when they personally transferred products between stores.  Subject to certain alterations to the class notice and claim form, the Court will grant the motion, conditionally certify the settlement class, appoint class counsel and the class representative, direct the distribution of class notice, and make a preliminary determination that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

**I.    BACKGROUND**

Plaintiff was an assistant manager at Defendant's Oxnard, Ventura, and Thousand Oaks locations from October 2005 through April 19, 2012.  Boring Decl., ECF No. 30 ¶ 3.  Plaintiff states that he used his personal vehicle to retrieve products or supplies from other store locations to bring to his home store location.  Id. ¶ 4.  There are approximately 1,400 current or former employees who are or were in the positions of Store Manager, Assistant Manager, and Department Manager who are also alleged to have used their personal vehicles for business purposes and who comprise the proposed settlement class.  Id. ¶ 6.  Plaintiff alleges that Bed Bath & Beyond failed

1  to indemnify or reimburse Plaintiff and the proposed settlement class for necessary business
2  expenditures, including fuel costs and the other fixed and variable costs of operating personal
3  vehicles for business purposes, in violation of California Labor Code section 2802, the California
4  Private Attorney General Act, Labor Code § 2699, and California's Unfair Competition Law, Bus.
5  & Prof. Code § 17200, *et seq*.

6  Plaintiff filed his original class action complaint in Alameda County Superior Court in
7  August 2012. The First Amended Class Action Complaint was filed on September 5, 2012, which
8  added a claim for penalties under California's Private Attorney General's Act. Defendant filed its
9  answer to the amended complaint on October 10, 2012, and its notice to remove the action to this
10 Court pursuant to the Class Action Fairness Act on October 11, 2012.

11 From December 2012 to June 2013, the parties engaged in discovery efforts, including the
12 taking of Plaintiff's deposition. On June 20, 2013, the parties participated in an all-day mediation
13 with mediator Jeffrey Ross, Esq., at which they executed a memorandum of understanding. Malk
14 Decl., ECF No. 29 ¶¶ 31–32. Plaintiff then filed the operative Second Amended Class Action
15 Complaint, ECF No. 26, which narrowed the proposed class to approximately 1,400 current and
16 former Assistant Managers, Store Managers, and Department Managers. The parties executed a
17 Joint Stipulation of Settlement and Release ("Settlement Agreement"), ECF No. 28, Ex. A, in
18 August 2013. On September 4, 2013, Plaintiff filed the instant motion for preliminary approval,
19 along with the Declarations of Craig J. Ackerman, Michael Malk, and Plaintiff Sean Boring. ECF
20 Nos. 27–30.

21 According to the Settlement Agreement, Defendant Bed Bath & Beyond will pay $415,000
22 as the "Maximum Settlement Amount."[1] Settlement Agr., ECF No. 28-1 ¶ 50. The parties have

---

[1] "Maximum Settlement Amount" is defined as:

> the sum of Four Hundred and Fifteen Thousand U.S. Dollars ($415,000), which represents the maximum amount payable in this Settlement by Bed Bath & Beyond, which includes, without limitation, attorney's fees, costs, claim administration expenses, the Service Enhancement to the Class Representative, and the net amount payable to Qualified Claimants.

Settlement Agr. ¶ 25.

United States District Court
Northern District of California

agreed on the following allocations of the settlement amount:

> Attorney's Fees: $138,333.33
> Litigation Costs/Reimbursements: $10,000.00
> Claims Administration Expenses: $20,000.00
> Class Representative Service Enhancement Payment: $7,500.00

Id. ¶ 50. The remaining $239,166.67 will be distributed to class members. Id. Class member payments will be calculated by the claims administrator as a pro rata share of each claimant's relative percentage of weeks worked at Bed Bath & Beyond during the class period, based on Defendant's internal records. Id. ¶ 70. If every class member makes a claim, the average settlement payment would amount to $170.83 per class member. Ackerman Decl., ECF No. 28 ¶ 40. However, each proposed class member's payment will be capped at ten times the estimated settlement payment for that class member. Settlement Agr. ¶¶ 50F, 70.

In the event that all costs and disbursements equal less than the Maximum Settlement Amount, the remaining funds would be donated to a *cy pres* beneficiary, the Volunteer Legal Services Program of the Bar Association of San Francisco. Settlement Agr. ¶ 50A. Checks not cashed within 180 days from the date of mailing will also revert to the *cy pres* beneficiary. Id. ¶ 77. Consequently, Bed Bath & Beyond will pay a total of $415,000, regardless of how the fund is distributed.

The settlement class release provides for the release of all claims arising out of the allegations in the Complaint. Plaintiff's release is a general release of liability. Id. ¶¶ 9, 12.

The parties propose to use Simpluris, Inc. as a claims administrator and to give notice to the class. Id. ¶ 61. Within thirty days of the Court granting preliminary approval of the settlement, Defendant will provide the claims administrator with a list containing the last-known addresses of each class member. Id. ¶ 62. The claims administrator will then check with the National Change of Address database to use the most recent address for each class member. Id. Within twenty-one days of the claims administrator receiving the class member list, the claims administrator will mail a Notice of Class Action Settlement and Claim Form. Id. ¶ 63. Twenty-one days prior to the end of the claims period, the claims administrator will send a reminder postcard to class members who have not already responded to the initial mailing. Id. ¶ 67. Class

members who do not claim their settlement allocation will forfeit their right to recover, but will still be considered to have released their claims. Id. ¶ 68.

The Settlement Agreement allows for objections to be filed by anyone, provided they are filed with the Court and served upon counsel within forty-five days from the date of mailing of the Notice of Class Action Settlement and Claim Form. Id. ¶ 54. The settlement provides for a sixty-day period for opt-out requests and the filing of claims. Id. ¶ 55.

Finally, Defendant retains the right to void the Settlement Agreement if greater than three percent of eligible settlement participants opt out of the settlement. Id. ¶ 59.

## II.     CONDITIONAL CLASS CERTIFICATION

Plaintiff seeks class certification of a settlement class consisting of: "All persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited Liability Corporation in the State of California from August 1, 2008 through the date of preliminary approval in a Covered Position." Covered Position is defined as the positions of Store Manager, Assistant Manager, and Department Manager.

Class certification under Rule 23 is a two-step process. First, Plaintiff must demonstrate that the four requirements of 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ____, 131 S.Ct. 2541, 2551 (2011)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal–Mart, 131 S.Ct. at 2551.

### A. Rule 23(a)(1) Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Numerosity is satisfied here because there are approximately 1,400 members in the proposed settlement class.

In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Here, the class definition specifies which current and former Bed Bath & Beyond employees are members of the class by using employee job titles. The class definition is adequately defined and ascertainable.

### B. Rule 23(a)(2) Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 131 S. Ct. at 2556 (internal quotations and quotation marks omitted). However, the common contention "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "'What matters to class certification . . . is not the raising of common "questions" – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, the settlement class satisfies the commonality requirement because the members of the class share several common legal and factual questions, including: (1) whether Bed Bath & Beyond violated California Labor Code section 2802 and California's Unfair Competition Law by

5

1  failing to reimburse the class for out-of-pocket business expenses incurred through the use of their
2  personal vehicles; (2) whether Bed Bath & Beyond's policy of excluding "normal commuting
3  miles" from reimbursable mileage violates section 2802 of the Labor Code where, as alleged here,
4  class members were asked to pick up or drop off products for other stores before or after work;
5  (3) whether the failure to reimburse mileage-related expenses in the absence of a request for
6  reimbursement is lawful; and (4) the nature and extent of class-wide injury and the measure of
7  damages for the injury.  Each of those questions is capable of generating "common answers apt to
8  drive the resolution of the litigation."

### C.  Rule 23(a)(3) Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Here, Plaintiff's claims are typical of the claims of the members of the settlement class because he was an Assistant Manager, he was subject to the policies and practices that gave rise to the claims of the class, and he seeks the same relief as the class members.

### D.  Rule 23(a)(4) Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).  The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prod.s v. Windsor, 521 U.S. 591, 626, n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158, n.13 (1982)).  Among other functions, these requirements serve as

ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n.13.  Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the adequacy of representation requirement is met.  Plaintiff does not have interests adverse to the other members of the settlement class, his claims are coextensive with the claims of the other class members, and Plaintiff has been involved with this case in various stages of the litigation.  The Court also finds that Plaintiff's counsel do not have conflicts of interest with the settlement class, that they have prosecuted the action on behalf of Plaintiff and the settlement class, and that they have been appointed by numerous courts as competent and adequate class counsel.  The Court, as discussed below, finds that Plaintiff's counsel will adequately represent the interests of the settlement class, and that Plaintiff and his counsel will vigorously prosecute the action on behalf of the class.

### E.     Rule 23(b)(3) Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'"  Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

This litigation concerns "[a] common nucleus of facts and potential legal remedies."  Id.  Plaintiff's claims focus on Defendant's company-wide policies and practices related to

reimbursement of business-related expenses, which Plaintiff alleges were applied consistently and uniformly to all class members.  See, e.g., Hopkins v. Stryker Sales Corp., No. 11-cv-02786-LHK, 2012 WL 1715091, at *9 (N.D. Cal. May 14, 2012) (finding predominance in employee class action challenging policy related to reimbursement for business expenses as violation of Labor Code section 2802, because "[t]he central question to be resolved will be determined based on evidence common to the class — namely Defendants' documents and testimony."); Stuart v. Radioshack Corp., No. 07-cv-4499-EMC, 2009 WL 281941, at *14–18 (N.D. Cal. Feb. 5, 2009) (holding same).  Plaintiff can establish those claims by relying on common proof that Defendant failed to develop or enforce a company-wide mechanism for reimbursing the settlement class for business expenses, such as use of personal vehicles.  Plaintiff also sought to challenge the legality of Defendant's policy excluding "normal commuting miles" from reimbursable mileage — a legal question also subject to common resolution.  Finally, nothing in the record suggests that individual issues would form a significant component of the litigation such that common question would not predominate.  For these reasons, the Court finds that Plaintiff has established Rule 23(b)(3) predominance.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  Id., 150 F.3d at 1023.  Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to the alternative procedures for adjudicating the claims of the members of the settlement class.

Because each element of Rules 23(a) and 23(b)(3) is satisfied, the Court finds that certification of the settlement class defined as follows is appropriate:
> All persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited Liability Corporation in the State of California from August 1, 2008 through the date of preliminary approval in a Covered Position [Store Manager, Assistant Manager, or Department Manager].

8

### F. Appointment of Class Representative and Class Counsel

Because the Court finds that named Plaintiff Sean Boring meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

>    (i)   the work counsel has done in identifying or investigating potential claims in the action;
>    (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>    (iii) counsel's knowledge of the applicable law; and
>    (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff seeks the appointment of Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel. Plaintiff's counsel have thus far adequately and vigorously prosecuted this action by investigating the potential claims, interviewing class members, propounding and reviewing discovery, defending Plaintiff's deposition, negotiating the present settlement at arms-length in an all-day mediation, and briefing the instant motion for preliminary approval. In addition, Plaintiff's counsel has prior experience with class actions and has been appointed by several state and federal courts as competent and adequate counsel. The Court therefore appoints Craig J. Ackermann, Esq. and Michael Malk, Esq. as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

### III. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex

1  Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a

2  settlement proposal is committed to the sound discretion of the trial judge." Class Plaintiffs v.

3  City of Seattle, 955 F.2d at 1276. Where the parties reach a class action settlement prior to class

4  certification, courts apply "a higher standard of fairness and a more probing inquiry than may

5  normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir.

6  2012) (citation and internal quotation marks omitted). Courts "must be particularly vigilant not

7  only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of

8  their own self-interests and that of certain class members to infect the negotiations." In re

9  Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

10      The Court's task at the preliminary approval stage is to determine whether the settlement

11  falls "'within the range of possible approval.'" In re Tableware Antitrust Litig., 484 F. Supp. 2d

12  1078, 1080 (N.D. Cal. 2007) (quoting Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F.

13  Supp. 2d 561, 570 (E.D. Pa. 2001)). See also MCL, 4th § 21.632. (courts "must make a

14  preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms

15  and must direct the preparation of notice of the certification, proposed settlement, and date of the

16  final fairness hearing."). Second, courts must hold a hearing pursuant to Federal Rule of Civil

17  Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable,

18  and adequate." Here, Plaintiff asks the Court to take the first step in granting preliminary approval

19  to the proposed settlement.

20      Preliminary approval of a settlement is appropriate if "'the proposed settlement appears to

21  be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

22  not improperly grant preferential treatment to class representatives or segments of the class, and

23  falls within the range of possible approval.'" In re Tableware, 484 F. Supp. 2d at 1079 (quoting

24  Manual for Complex Litigation, Second § 30.44 (FJC 1985)). The proposed settlement need not

25  be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations

26  to the class. Hanlon, 150 F.3d at 1027) ("Settlement is the offspring of compromise; the question

27  we address is not whether the final product could be prettier, smarter or snazzier, but whether it is

28  fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a

10

1  number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness.  Id.  Courts do not have the ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or fall in its entirety."  Id.

Here, the Court finds that the Settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  In re Tableware, 484 F. Supp. 2d at 1079.

First, the Court finds nothing in the record to suggest that the settlement negotiation process was collusive.  The settlement was negotiated at arms-length at a daylong mediation with a qualified mediator.

Second, the settlement amount is adequate when compared to the total potential damages in the case.  Using data produced by Defendant, Plaintiff developed a damages analysis that approximates Defendant's total potential liability in this litigation, excluding interest, attorney's fees, and potential statutory penalties, as $1,008,640.  Ackerman Decl. ¶¶ 26–27.  The Court finds that a net recovery for class members of $239,166.67 is fair, reasonable, and adequate in light of the strength of Plaintiff's case, and the risk, expense, complexity, and likely duration of this litigation.

Third, the stage of the proceedings weighs in favor of approval.  Though this class action settlement was reached prior to class certification, the parties engaged in six months of discovery, Plaintiff's deposition was taken, and the parties exchanged mediation-related discovery.

Fourth, experienced counsel for both parties endorse the settlement.

Fifth, no governmental actor is relevant to this action, rendering that factor immaterial to

the settlement approval process.

Sixth, the Court must wait until the claim period closes to determine the reaction of the class members to the settlement. However, Plaintiff, who personally attended the mediation, endorses the settlement as well.

With respect to the *cy pres* component of the settlement, the Court finds that the parties' selection of the Volunteer Services Program of the Bar Association of San Francisco satisfies the requirements for a *cy pres* award, which must be guided by the objectives of the underlying statutes and "must not benefit a group too remote from the plaintiff class." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). An award to a legal services organization is often an appropriate use of *cy pres* funds. See, e.g., Garner v. State Farm Mut. Auto. Ins. Co., CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)(distributing uncashed class payments to distributions to the Volunteer Legal Services Program and Bay Area Legal Aid); T. Doyle, Residual Funds in Class Action Settlements: Using "Cy Pres" Awards to Promote Access to Justice, Fed. Law., July 2010, at 26.

Finally, the Court finds the parties' agreement with respect to attorneys' fees and a service enhancement award for named Plaintiff Sean Boring falls "within the range of possible approval." The Court will evaluate the requests for fees and a service enhancement award at the final approval hearing, after Plaintiff's counsel file their motion for fees and costs, and the class has an opportunity to object.

For the foregoing reasons, the Court will preliminarily approve the class action settlement, subject to the alterations discussed below with respect to the class notice plan.

## IV.  CONDITIONAL APPROVAL OF CLASS NOTICE PLAN

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." The notice must be "the best practicable," "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (citations omitted). "The notice should describe the action and

the plaintiffs' rights in it." Id. Rule 23 provides: "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

### A.   Notice Dissemination

The parties propose to use Simpluris, Inc. as a claims administrator, and to give notice to the class. Settlement Agr. ¶ 61. The claims administrator will cross-check the class list, composed of the last known addresses of the class, with the National Change of Address database, in order to account for address changes. Id. Within twenty-one days of the claims administrator receiving the class member list, the claims administrator will mail a Notice of Class Action Settlement and Claim Form. Id. ¶ 63. Twenty-one days prior to the end of the claims period, the claims administrator will send a reminder postcard to class members who have not already responded to the initial mailing. Id. ¶ 67. Prior to mailing reminder postcards, the claims administrator will perform an address trace on notices returned undeliverable. Id. Class members who do not claim their settlement allocation will forfeit their right to recover. Id. ¶ 68.

The Court finds the parties' proposed notice plan comports with due process requirements. In particular, the Court notes that the claims administrator will employ the "best practicable" means of reaching each class member by cross-checking the class list with the National Change of Address database, performing address traces on undeliverable notices, and sending a reminder postcard prior to the close of the claims period.

### B.   Claim Period, Opt-outs, and Objections

The Settlement Agreement allows for objections to be filed by anyone, provided they are filed with the Court and served upon counsel within forty-five days from the date of mailing of the

1  Notice of Class Action Settlement and Claim Form. Id. ¶ 54. By contrast, the settlement provides

2  for a sixty-day period for opt-out requests and the filing of claims. Id. ¶ 55.

3  The parties do not explain why the proposed objection period ends prior to the end of the claim period. The Court finds no reason to maintain any discrepancy, particularly where the final approval hearing will occur with sufficient time for the parties to prepare any responses to objections, should any be forthcoming. Consequently, the Court approves the parties' claim period, opt-out, and objection plan with the caveat that the objection period be extended to sixty days from the date of the mailing of the class notice.

The Court notes that the filing of objections with the Court constitutes service upon counsel for the parties, as the parties' counsel are registered to receive filings through the Court's Electronic Case Filing system.

### C. Proposed Class Notice and Claim Form

The Court has reviewed the parties' proposed Notice of Settlement of Class Action Lawsuit, Settlement Agr., Ex. 1, and proposed Claim Form, Settlement Agr., Ex. 2. The Court will approve the class notice and claim form subject to the following alterations.

First, the paragraph in Part III of the class notice discussing attorneys' fees and expenses shall include an additional sentence as follows: "The final amount of attorneys' fees and expenses will be determined by the Court." The same is true for the paragraph discussing a service payment to the Class Representative, which shall end with the additional sentence: "The final amount of any service payment to Plaintiff Sean Boring will be determined by the Court."

Second, the paragraph in Part III of the class notice discussing calculation of class member awards contains a blank space referring to the *cy pres* beneficiary. That sentence shall read: "Any funds remaining will be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco, subject to final approval by the Court."

Third, the last sentence of Part VI of the class notice titled "Right to Object" shall be deleted, as filing with the Court constitutes service on the parties. Class Counsel's address shall remain on the class notice, however, for the benefit of class members seeking more information regarding the settlement.

Fourth, the sentence in the second paragraph of the claim form concerning the *cy pres* beneficiary shall read: "Any funds in excess of ten (10) times the Estimated Payment will be donated to the Volunteer Legal Services Program of the Bar Association of San Francisco, subject to final approval by the Court."

The parties shall re-submit the amended Notice of Settlement of Class Action Lawsuit and Claim Form for the Court's approval. The Court's preliminary approval of the settlement shall take effect upon approval of the re-submitted notice and claim form.

**V.     CONCLUSION**

For the foregoing reasons, and subject to the conditions discussed below, the Court hereby:

1.     certifies for settlement purposes a class of "All persons, who are, have been, or will be employed by Bed Bath & Beyond of California Limited Liability Corporation in the State of California from August 1, 2008 through the date of preliminary approval in a Covered Position [Store Manager, Assistant Manager, or Department Manager]";

2.     appoints Plaintiff Sean Boring as Class Representative and Ackermann & Tilajef, P.C. and Michael Malk, Esq. as Class Counsel;

3.     grants preliminary approval to the parties' class action settlement; and

4.     directs distribution of the proposed class notice and claim form in the manner agreed upon by the parties.

The parties shall file an amended class notice and claim form consistent with Part IV.C. of this Order, supra, within fourteen days from the date of this Order. This Order will become effective only upon separate Court approval of the parties' amended class notice and claim form.

Class Counsel shall file their motion for attorneys' fees and costs by no later than two weeks prior to the end of the period for class members to object to the settlement.

The Court will hold a final approval hearing and a hearing on Class Counsel's motion for attorneys' fees on May 29, 2014, at 2:00 p.m., in Courtroom 9, 19th Floor, 450 Golden Gate

/ / /

/ / /

/ / /

Avenue, San Francisco, California. Class Counsel's memorandum of points and authorities in support of final approval, and responding to any objections, shall be filed by May 8, 2014.

**IT IS SO ORDERED.**

Dated:  November 21, 2013

_____
JON S. TIGAR
United States District Judge